UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 23-595

Caption [use short title]

Motion for: expanded certificate of appealability

Set forth below precise, complete statement of relief sought:

Petitioner seeks an expanded certficate of appealability following the denail of his petition for a writ of habeas corpus pursuant to 28 USC 2254

Mark Richardson v. Michael Capra

MOVING PARTY: Appellant/petitioner                    OPPOSING PARTY:

☐ Plaintiff   ☐ Defendant
☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Denise Fabiano          OPPOSING ATTORNEY: ADA Stephen Kress

[name of attorney, with firm, address, phone number and e-mail]

The Legal Aid Society, Criminal Appeals Bureau   New York County District Attorney's Office
199 Water Street, NY, NY 10038                   One Hogan Place, New York, NY, 10013
dfabiano@legal-aid.org                            kress@dany.nyc.gov

Court- Judge/ Agency appealed from: Hon. Valerie E. Caproni

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain):

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:
Has this request for relief been made below?   ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No
Requested return date and explanation of emergency:

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know

Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No If yes, enter date:

Signature of Moving Attorney:
/s/ Denise Fab    Date: 5-26-23    Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-------------------------------------------------------------------x

| | | |
|---|---|---|
| MARK RICHARDSON, | : | |
| | | 23-595-PR |
| Petitioner, | : | |
| | | |
| -against- | : | AFFIRMATION IN SUPPORT OF |
| | | MOTION FOR |
| MICHAEL CAPRA, Superintendent, | : | EXPANDED |
| Sing Sing Correctional Facility | | CERTIFICATE OF APPEALABILITY |
| | : | |

-------------------------------------------------------------------x

State of New York        )
                         ) ss.:
County of New York       )

DENISE FABIANO, an attorney admitted to practice before this Court, hereby affirms under penalties of perjury that the following statements are true, except for those made upon information and belief, which she believes to be true:

1.  I am an attorney associated with The Legal Aid Society, Criminal Appeals Bureau, and I represent petitioner-appellant, MARK RICHARDSON ("petitioner"), in this matter. I am, accordingly, familiar with the facts herein. This affirmation and accompanying memorandum of law are submitted in support of petitioner's motion for an expanded certificate of appealability to appeal from an order and judgment of the district court, dated March 22, 2023,

1

denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus (Hon. Valerie Caproni) (Dkt. Sheet, #32).

2. The district court granted a certificate of appealability on "whether the state courts clearly erred by applying <u>Chapple</u> and its progeny rather than <u>Seibert</u> when deciding Petitioner's suppression motion." (Dkt. Sheet #32 at p.26). Petitioner subsequently requested that the district court expand its certificate of appealability to include the second issue briefed in the district court on whether his right to remain silent was scrupulously honored under <u>Michigan v.Mosley</u>, 423 U.S. 96 (1975) (Dkt. Sheet #36). That request was denied by the district court without prejudice because that court had lost jurisdiction to consider the request once petitioner filed his notice of appeal (Dkt. Sheet # 37).

3. The matter involves a challenge to petitioner's convictions, after a jury trial in the Supreme Court of New York, New York County, where petitioner was convicted of murder in the second degree, robbery in the first degree and robbery in the second degree and sentenced, on October 27, 2011, to concurrent terms of twenty-five years to life, twenty years, and fifteen years in prison, respectively.

4. Petitioner appealed as a poor person to the Appellate Division, First Department, of the New York Supreme Court. On February 21, 2017, petitioner's conviction was affirmed, People v. Richardson, 147 A.D.3d 577 (1st Dept. 2017). On June 22, 2017, leave to appeal to the New York Court of Appeals was denied. People v. Richardson, 29 N.Y.3d 1085 (2017). Petitioner remains incarcerated.

5. On January 23, 2023, the Magistrate's Report and Recommendation recommended that the petition for a writ of habeas corpus be granted, finding that the state courts had failed to decide petitioner's claims under Missouri v Seibert, 542 U.S. 600 (2004) (Dkt. # 27). It, therefore, did not need to reach the issue raised by petitioner as to the second claim that the same statements were also suppressible under Michigan v. Mosley, 423 U.S. 96 (1975).

6. On March 22, 2023, the District Court rejected the Magistrate's Report and Recommendation and denied the petition (Dkt., Sheet, #32). The District Court granted a certificate of appealability on the Seibert issue (Dkt. Sheet, #32).

7. Petitioner filed a notice of appeal to this Court (Dkt. 35).

8. On April 26, 2023, petitioner requested that the certificate of appealability be expanded to include the related issue under Michigan v.

3

Mosley, 423 U.S. 96 (1975). (Dkt. 36). The District Court denied that application without prejudice (Dkt. 37).

9. The facts are fully set forth in the §2254 petition and memorandum of law (Dkt. Sheet, #s 1, 6) and will not be fully set out again here. A brief summary follows.

## THE STATE COURT TRIAL PROCEEDINGS

10. Petitioner, Mark Richardson, was arrested on July 10, 2008, for the January 2008, murder of Helen Abbot. Although Richardson had been brought in for questioning in February 2008, and gave a short, largely exculpatory statement to Detectives Gerard Dimuro and Ruben Henriquez, he had been released, and the investigation had continued. Detective DiMuro --a veteran detective--admitted that, on July 10, after Mr. Richardson had been arrested and brought to the precinct, he made a conscious decision not to administer the Miranda warnings before questioning Mr. Richardson, ostensibly because he did not plan to cover new ground beyond the February 2008 statement. Nevertheless, along with Detective Henriquez, he did cover considerable new ground, detailing new evidence against Mr. Richardson, namely, cell phone records, video surveillance, and a DNA match--"concrete evidence" in DiMuro's words. Richardson become "agitated," and blurted out that he might

4

have had intimate contact with the victim, and then invoked his right to remain silent. This statement, of course, was properly suppressed by the hearing court.

11. After this blatant <u>Miranda</u> violation, the police continued in their single-minded endeavor to procure a confession from Mr. Richardson. After Mr. Richardson invoked his right to remain silent, Detective Henriquez –instead of scrupulously honoring that right— aggressively pursued a statement, telling Mr. Richardson that an elderly woman had been "brutally killed," that his DNA was there, that they "had him on video" going into the building, and the phone records from the victim's phone made it "look[]bad." Henriquez told him that Richardson's earlier suggestion that he could have been sucking the victim's breasts would not play well in court. When Richardson started crying, Henriquez told him that the police were giving him "every opportunity to tell your side of the story" and assured Mr. Richardson that he knew he had a family, that he wasn't "born a monster" and that he had something "heavy in his heart" he should get out. He persisted that there was "something he need[ed] to say" and when Richardson agreed, he immediately took him back to the interview room where Dimuro and Henriquez took another statement. This statement, of course, was also suppressed by the hearing court.

12. Nevertheless, Mr. Richardson was left in the same room and told that

an Assistant District Attorney would be coming to take his videotaped statement. Five hours later, the A.D.A., along with Dimuro and Henriquez, videotaped a repeat of what was essentially the earlier suppressed statement. In doing so, the prosecutor not only expressly referred back to the earlier statement at the <u>beginning</u> of the videotape, but physically showed it to Mr. Richardson before taking his statement on video. Moreover, when the ADA administered the <u>Miranda</u> warnings, she reminded Richardson that he had earlier been read and had waived the same rights by the police officers in the room. Detectives DiMuro and Henriquez were in the room throughout the entire videotaped statement, with Dimuro participating in the questioning.

13. From there, having been led down the same path as his earlier statement, Mr. Richardson, not surprisingly, repeated his earlier, suppressed statement. After the videotaped statement had concluded, Richardson was again briefly left in the interview room where he then told Henriquez that the "phone belonged to the old lady." At about 8:45 p.m., without being re-Mirandized, Richardson told Henriquez that he had called his brother and his fiancée from the victim's phone and then repeated his videotaped statement.

14. Petitioner—citing <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), <u>Michigan v. Mosley</u>, 423 U.S. 96 (1975), and <u>Miranda v. Arizona</u>, 348 U.S. 436 (1966)—

argued, inter alia, that he had been subject to continuous interrogation and that the police failed to scrupulously honor his invocation of his right to remain silent, requiring that his subsequent videotaped and written statement be suppressed. The court refused to suppress either the videotaped statement or the subsequent un-Mirandized statement and petitioner was convicted at trial and sentenced to an aggregate term of twenty-five years to life in prison.

15. Petitioner renewed his claims in the Appellate Division, First Department, and his claim was rejected. People v. Richardson, 147 A.D.3d 577 (1st Dept. 2017).

The Appellate Division stated:

> Defendant's videotaped statement was made approximately five hours after the initial Miranda violation. Much shorter breaks have been found sufficient to dissipate the taint of a Miranda violation. In addition, 'defendant had demonstrated an unqualified desire to speak', seemed alert and relaxed in the video, and did not appear nervous or intimidated. Indeed, he was even 'laughing on occasion.'"

147 A.D.3d at 581. The court noted that Mr. Richardson had been Mirandized after his first encounter with the police on February 5, and the ADA was the "sole questioner in the admitted portion of the video. Although two of the detectives who had conducted the earlier interrogation were present, they did

7

not participate in the questioning in the admitted segment" that was played for the jury. Id. Further, the court noted that Mr. Richardson had made no pre-Miranda inculpatory statements because he had only placed himself at the scene (which he had already done in his February 5th statement) and maintained that Hall and/or Johnny committed the assault, and he was merely present in the apartment. Accordingly, the court concluded that:

> [T]he first 13 minutes of the videotaped interrogation were sufficiently attenuated from the Miranda violation and properly admitted. Neither the defendant's invocation of his right of silence after his oral statement, nor the other alleged improprieties regarding the suppressed statements require suppression of the videotaped statement. In any event, regardless of whether the court should have suppressed defendant's entire videotaped statement as unlawfully obtained, any error was harmless in light of the overwhelming evidence of guilty.

Id. at 582 (citations omitted).

16. Leave to appeal to the New York Court of Appeals was sought, petitioner again arguing that the videotaped statement and subsequent written statement should have been suppressed as the product of continuous interrogation after an un-Mirandized statement, and where appellant invoked his right to remain silent and the police failed to scrupulously honor that right, and where the admitted statements also were the fruit of that constitutional violation. U.S. Const. Amend. V, XIV; N.Y. Const., Art. I, §6. Leave to appeal

was denied on June 22, 2017. People v. Richardson, 29 N.Y.3d 1085 (2017).

**FEDERAL HABEAS CORPUS PROCEEDINGS**

17. Petitioner raised the both the Seibert and Mosley claims again in a habeas corpus petition and accompanying legal memorandum that were timely filed on August 23, 2018, and September 13, 2018, respectively. Dkt. Sheet, #s 1, 6. Thereafter, on September 27, 2019, the State filed its response in opposition. Dkt. Sheet, #17. On November 21, 2019, petitioner filed a reply memorandum of law. Dkt. Sheet, #20.

18. On January 23, 2023, Magistrate Judge Ona T. Wang issued a Report and Recommendation recommending granting of the petition, Dkt. Sheet, #27, to which the State objected on February 6, 2023. Dkt. Sheet, #28. On February 27, 2023, petitioner filed its response to the State's objections. Dkt. Sheet, #31. On March 22, 2023, the Court issued an order rejecting the Magistrate Judge's Report and Recommendation and dismissing the petition. Dkt. Sheet, # 32. Applying the deferential standard of the Antiterrorism and Effective Death Penalty Act (AEDPA), Judge Caproni concluded that the state court courts decisions were "not contrary to or unreasonable in light of clearly established federal law," stating the Appellate Division affirmed the trial court's conclusion that petitioner had initiated conversation with Detective Henriquez which was

"necessary, but not sufficient, to render subsequent statements admissible" and suppressed some, but not all statements. The state courts considered Henriquez's efforts to persuade petitioner to speak and concluded that "<u>Mosley</u> did not proscribe 'per se rules governing the waiver of <u>Miranda</u> rights.'" (Dkt. 32 at p.25).

19. The district court granted petitioner a Certificate of Appealability as to whether "the state courts clearly erred by applying <u>Chapple</u> and its progeny rather than <u>Seibert</u> when decision Petitioner's suppression motion."(Dkt. Sheet, #32 p. 26).

20. Petitioner subsequently requested that the District Court expand the Certificate of Appealability to include the admissibility of the statements under <u>Michigan v. Mosley</u>, 423 U.S. 96 (1975). Dkt. Sheet # 36. The District Court denied the application without prejudice. Dkt. Sheet #37.

\* \* \*

WHEREFORE, for the reasons stated herein and in the accompanying memorandum of law, the certificate of appealability should be expanded, pursuant to 28 U.S.C. §2253(c) and Rule 22(b) of the Federal Rules of Appellate Procedure, to include the issue raised under <u>Michigan v. Mosley</u>, <u>supra</u>.

*[signature: Denise Fab...]*

DENISE FABIANO (DF7595)
Attorney for Petitioner-Appellant
The Legal Aid Society
199 Water Street, 5th Floor
New York, New York 10038
(646) 634-6342
dfabiano@legal-aid.org

May 26, 2023

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
----------------------------------------------------------------x

MARK RICHARDSON, :

                Petitioner, :

        -against- : 23-595-PR
MICHAEL CAPRA, Commissioner, :
Sing Sing Correctional Facility           MEMORANDUM OF
                                                           : LAW IN SUPPORT OF
                                                           MOTION FOR
                                                           : EXPANDED
Respondent.                                              CERTIFICATE OF
                                                            APPEALABILITY

----------------------------------------------------------------x

## STATEMENT OF FACTS

The allegations contained in the accompanying affirmation of Denise Fabiano are incorporated herein by reference.

# ARGUMENT

### PETITIONER HAS MADE A SUBSTANTIAL SHOWING THAT THE VIDEOTAPED STATEMENT, AND SUBSEQUENT WRITTEN STATEMENT, SHOULD HAVE BEEN SUPPRESSED WHERE THEY WERE THE INVOLUNTARY PRODUCT OF CONTINUOUS INTERROGATION AFTER AN UN-MIRANDIZED STATEMENT AND WHERE PETITIONER INVOKED HIS RIGHT TO REMAIN SILENT AND THE POLICE FAILED TO SCRUPULOUSLY HONOR THAT RIGHT. U.S. CONST. AMENDS. V, XIV; U.S.C. 2254.

Petitioner's writ in this case raised the following issues:

> Whether petitioner's videotaped statement and subsequent written statement should have been suppressed where they were the involuntary product of continuous interrogation after an un-Mirandized statement and where petitioner invoked his right to remain silent and the police failed to scrupulously honor that right. U.S. Const. Amends. V, XIV; 28 U.S.C. § 2254.

Although the judgment and order addressed and decided both prongs of the above issue, the certificate of appealability (COA) was granted on whether "the state courts clearly erred by applying <u>Chapple</u> and its progeny rather than <u>Seibert</u> when deciding Petitioner's suppression motion." It is respectfully requested that the COA be enlarged to include the second prong of the briefed issue because, at the very

13

least, it is debatable that the state failed to scrupulously honor petitioner's invocation of his right to remain silent.

A court must issue a COA when a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Where the district court has denied a § 2254 petition on the merits, "[a] petitioner satisfies that standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. A COA "does not require a showing that the appeal will succeed," or even "that some jurists would grant the petition for habeas corpus. A claim need only be debatable …." Id. at 337-38. Judged by these standards, it is respectfully submitted that petitioner is entitled to a COA on his claim that his constitutional rights were violated based on the state courts' denial of suppression under Michigan v. Mosley, 423 U.S. 96 (1975), which holds that the police must scrupulously honor an individual's invocation of the right to remain silent.

Here, it is debatable whether Mr. Richardson's statement to Detective Henriquez, asking how serious the charges were, shortly after he had clearly invoked his right to remain silent, is sufficient on its face to find that no Mosley violation occurred as the district court found. See Oregon v. Bradshaw, 462 U.S. 1039, 1044

14

(1983) (clarifying that the "'initiation' of a conversation by a defendant" does not automatically "amount to a waiver of a previously invoked right to counsel"). There is a strong claim that, under the circumstances presented in this case, petitioner's right to remain silent was not scrupulously honored and that the state courts unreasonably concluded otherwise.

Here, it is not even clear that the state trial court believed petitioner's right to remain silent was scrupulously honored as it, instead, suppressed the statement that immediately followed petitioner's question and Henriquez's response based on the Miranda violation. The trial court noted that when Richardson asked Henriquez how serious the charges were against him, rather than briefly responding and not going beyond the question asked, Henriquez "endeavored to persuade Richardson that his expressed intention not to speak further to DiMuro was ill-advised." (Decision at 35-36) cf. United States v. Oehne, 698 F.3d 119, 123-24 (2d Cir. 2012) (finding no invocation of the right to remain silent but, even if there were, petitioner waived those rights by spontaneously discussing his offense where *"the officers did not encourage [petitioner] to speak with them or otherwise interrogate him"*) (emphasis added). Henriquez detailed the evidence against Richardson and appealed to his "true nature" as a "family man," telling him he was not a "monster." (Decision at 36). As a result, an hour and fifty-five minutes after he invoked his right to remain

15

silent, Richardson "now upset and crying, accepted his advice" and was brought back into the interview room to answer questions about the murder. Id. This time, DiMuro read Richardson his Miranda rights. In suppressing this second statement, the trial court found that there was no "sufficient break in the causal connection between the Miranda violation to ensure that the Miranda warnings that DiMuro provided as the new session commenced were sufficient to protect Richardson's rights." (Decision at.37). The hearing court did not address the impact of Mosley on that or any subsequent statements.

In affirming, the Appellate Division summarily concluded only that "[n]either defendant's invocation of his right of silence after his oral statement, or the other alleged improprieties regarding the suppressed statements require suppression of the videotaped statement." 147 A.D.3d 577, 582 (1st Dept. 2017).

Based on this record, there is a debatable issue about whether the police scrupulously honored petitioner's clear and indisputable invocation of his right to remain silent and whether the Appellate Division unreasonably concluded that it did not. Inasmuch as this Court will be hearing the factually intertwined claim on the Miranda issue, it is respectfully requested that the COA be enlarged to include both issues.

\*   \*   \*

On this record, petitioner has established that he was denied his constitutional rights where his statements were both the involuntary product of continuous interrogation after an un-Mirandized statement and where he had invoked his right to remain silent and the police failed to scrupulously honor that right and that the state courts unreasonably applied established precedent in summarily rejecting his claim. At the very least, "jurists of reason could disagree with the district court's resolution" of this issue and "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Accordingly, the COA should be expanded to include this issue.

## CONCLUSION

FOR THE REASONS STATED ABOVE, THIS COURT SHOULD EXPAND THE CERTIFICATE OF APPEALABILITY.

Respectfully submitted,

*Denise Fab* [signature]

DENISE FABIANO (DF 7595)
THE LEGAL AID SOCIETY
Attorney for Petitioner Mark Richardson
199 Water Street, 5th Floor
New York, New York 10038
(646) 634-6342
dfabiano@legal-aid.org

May 26, 2023